We're ready for our third case this morning, 19-2161, United States v. Torres. And for the appellant is Ms. Skinner. You may proceed. Thank you. Good morning. My name is Amanda Skinner and I'm here on behalf of the appellant, Mr. Torres. The district court used an appellate standard of review and viewed the evidence in this case in the light most favorable to the government. The government agrees that a district court should decide disputes of fact without applying a presumption in favor of either party. This was not harmless error and this court should remand so that the district court can make the requisite findings in this case. I'd like to distinguish our situation from three recent decisions of this court on a similar topic. Goebel, Shelton, and Madrid-Mendoza are recent decisions by this court that do address situations where a district court used the wrong, basically the wrong standard. But our case is different. In our case, both the historical facts and inferences drawn from those facts were disputed. And the example I'd like to start with is on page five of the district court's order. And this is a fact that it relates to the issue of the standard of review, but then it also relates to another issue that we argue, which is, was there justification to expand or continue the traffic stop in this case based on the actions of the passenger in the vehicle? This was a disputed fact, even whether or not the passenger approached the duplex, whether she went into the duplex. And the district court judge here just adopted the magistrate court findings. And I think you can see what the issue is when we look at these findings. A testimony from Officer Lujan, who was conducting surveillance in this case, was that he could not see which of the two apartments in the duplex the passenger approached and that the other duplex was unoccupied. That's his testimony. It doesn't mean that she entered an apartment. The testimony also showed that there were at least nine other residences on the block in this case. And the district court went on to state, these facts of record fully support the conclusion that the passenger entered, or at least approached, the target apartment. Viewing the evidence in the light most favorable to the government, the court adopts the magistrate judge's finding and overrules the defendant's objection. That's a critical fact in this case. And the wrong standard essentially prejudiced Mr. Torres and placed the burden on him, which was impermissible. The district court should have made its own findings, should have made its own credibility determinations in this case, rather than simply viewing the report and recommendation from the magistrate court judge and viewing it in the light most favorable to the government, adopting all of those findings. We had numerous facts that were in dispute in this case. Some were resolved in our favor by the district court. But another fact that I think is critical, especially to the issue of the extension of the stop, and just shows sort of how the wrong standard bleeds into this entire case, is the district court's determination that Ms. Espinoza's lack of identification was suspicious and might indicate a false identity. Officer Krause was the officer who initially performed the traffic stop in this case. And Officer Frias is the officer who was initially interacting with the passenger on the other side of the vehicle at the same time that Officer Krause was interacting with Mr. Torres. Officer Frias, frankly, had credibility issues that were not resolved by either the magistrate court judge or the district court judge in this case. Mr. Krause, let me ask you a question. When Officer Krause was radioed and told, stop this car, was he told to stop it because of a traffic offense or because of a suspected drug transaction, or was he given any reason why he should stop the car? He indicated, Officer Krause indicated that he did actually observe a generic white SUV commit what he believed to be a parking violation. So when that call came through from Officer Lujan, I believe Officer Krause testified, I saw it. So the answer is he wasn't, he was not ever told, stop this car for drug reasons. Well, there's also testimony, Your Honor, that Officer Krause had been aware, I believe it was Officer Krause was aware that this house was under surveillance and he had been asked to perform traffic stops like this. All right. But this particular, the evidence for this particular stop was not stopping, stop them because of the drug suspicion. And it wasn't that he didn't know about anything. He had observed the traffic offense. He was not told anything to the contrary. So the evidence at least would support the basis that his stop was because he observed a traffic violation. I think that was part, I think that was part of the reason, Your Honor. But Officer Krause knew the call was coming in from officers who were conducting surveillance on this location. And later, actually, Officer Krause tells his colleagues, showing that he was aware that the passenger had at least exited the vehicle at some point. He tells his colleagues, you know, basically after he says, I've got nothing unless you want to push the issue about her coming and going for that short amount of time. So I think there is evidence in the record that that he knew that really the reason for this stop was, was not for him to give a verbal warning on a 20 second parking violation. It was because there was some hunch that this passenger perhaps had been in the vicinity of the drug house. But that just. But he had he had personal knowledge apparently of the traffic violation. Of a generic SUV? Yes, Your Honor. A generic white SUV. And we are not abandoning the argument that this was an unjustified stop. The record does support that this was a busy street. There was traffic on the street. Officer Krause lost the SUV for some point of time. It certainly wasn't a minute, but he did lose it for several seconds and had to rely on another officer telling him where he had noticed an SUV turning. And eventually, Officer Krause caught up to what he believed was the same SUV and initiated the traffic stop. And the record also shows that that Officer Krause testified that that his intention with respect to this, you know, non-criminal parking violation was to issue a verbal warning. I think I think I understand your argument on the illegality from the inception here. Setting that aside, would there be probable cause to search the car because of the marijuana odor? Was that enough in itself for this search to eventually have occurred if they wanted to? Thank you, Your Honor. This is a critical point and it goes to credibility and also just brings us back to the issue of the district court using the wrong standard. Officer Krause engaged in some quality police work with respect to the marijuana. While I have to acknowledge that oftentimes an odor of burnt marijuana could lead to probable cause to search a vehicle. In this case, Officer Krause dispelled any suspicions that would have been related to the odor of burnt marijuana. And he's clear enough about that in his communication to the officers on scene, which you can see in the video. And we highlight some of those quotes in our briefing. He told other officers that Mr. Torres was not impaired, that he had the valid medical card on him. Officer Krause clearly did not believe that this was a potential DUI situation. And he also did not seem to have any sort of reasonable suspicion that there were that there was marijuana in the vehicle. So this is what about link to the passenger with respect to you to possess or use marijuana? So they didn't know that they didn't ask her if she had a valid medical card and that's additional police work that the officer certainly could have engaged in during the first six minutes of this stop when they were, you know, conversing with her. At the same time, Officer Krause was speaking to Mr. Torres. Officer Krause investigated what he thought was relevant with respect to the odor of burnt marijuana. And during this investigation, everything on the passenger came back clear. So when Mr. Torres was handed his documents back and told, basically, you will be free to go, everything's over, but I need you to hold on here for a second. All the officers knew at this point was that the passenger in the vehicle walked in the area of a duplex that was under surveillance and they lost sight of her for approximately 30 seconds. That Mr. Torres was not suspected of DUI. Mr. Torres was not suspected of having marijuana in the vehicle because they would have asked to search at that point. And again, there were no follow-up questions with the passenger with respect to the odor of burnt marijuana. So I think that this is a situation where, you know, Officer Krause's good police work has to be credited, even as though it cuts against the government's arguments. Let me ask you two related questions. One is, you keep saying that there was no information suggesting that the marijuana was in the vehicle. I find it difficult to square with the fact that the officer smelled burnt marijuana, which suggests that they were smoking marijuana or somebody was smoking marijuana in the vehicle. So I guess I've got three related questions. That's the first one, is why do you keep saying that? But number two, even if Mr. Torres has a medical marijuana card, why would that obviate probable cause to believe that he was violating the Controlled Substances Act? Because there is no exception, as I understand it, for possessing medical marijuana to exempt you from a violation of the Controlled Substances Act. And then lastly, with regard to the passenger, maybe the officer was negligent in not asking the passenger why she didn't, you know, if she had a medical marijuana card. But based on the information that was available, based on the totality of information that was elicited, why would that have not created probable cause to believe that the passenger was guilty of possessing marijuana? So with respect to the odor of marijuana in the vehicle, again, Officer Krause would have investigated Mr. Torres as DUI if he believed that Mr. Torres was smoking in the vehicle. He had the opportunity to look at him up close. It is, you know, it's a crime to be DUI. So Officer Krause could have, you know, pursued that if he thought that it was valid. And this is, I want to make a brief point on this. There is testimony in the transcript that Officer Frias testified in a related hearing that this was a DUI investigation and that Officer Frias believed him to be DUI. You know, this is where a cold record becomes difficult. I can just describe that situation to you as watching Officer Frias now say it wasn't a DUI investigation when he got into federal court and testified under oath and testified that he was just unprepared in the state hearing and he couldn't hear conversations that were happening within a few feet of him and he couldn't hear radio traffic that was over his radio and is clearly audible through the video. So even if this court is concerned that the marijuana or believes that the marijuana could have been an issue that could be used to develop some reasonable suspicion, the officers on scene did not have any concerns with respect to the marijuana. And it would only be a federal crime if they actually had reasonable suspicion that there was possession at the time. And this is just to credit the facts that Krause had and give him credit for being a officer who was on scene. So what do you do? I know you disagree on the their interpretation of whether she approached the stakeout house or not, but she did. Ms. Espinosa also gave false information to the officers. What do we do about that? So that was not known until after Mr. Torres had been cleared and we are arguing that the stop should have ended. So with respect to the information she gave down the line, that's that was not known to the officers. All they knew about the passenger was approaching the duplex area and that the name she gave was clear and valid. And that in Officer Frias's opinion, an adult not knowing their Social Security number was suspicious. And that's credibility. What do we do in a case where, you know, a traffic stop and then they develop an investigation into a passenger? What happens there? The driver, can he be detained during the completion of the passenger investigation or can he be permitted to drive off and leave his passenger behind? What's a reasonable police force to do? We would argue that Mr. Torres should have been free to go. If the agents wanted to continue discussing things with the passenger, they could have done what they did here. Asked her to step out of the vehicle. We want to ask you some questions. Mr. Torres, you're free to go. And I see that I am running out of time. I'd like to reserve just 15 seconds. Oh, thank you so much. Do you want to finish up at all on that question? No, thank you, Your Honor. Thank you, Counsel. Let's turn to Ms. Stahl. Good morning. May it please the court. My name is Joni Stahl and I'm an assistant U.S. attorney in Las Cruces, New Mexico. This court should affirm the district court's conclusion that no Fourth Amendment violation occurred in this case. Excuse me. The stop itself was valid for two reasons. First, Officer Lujan and Officer Kraus both observed Torres commit a parking violation which gave probable cause to conduct a traffic stop to issue a citation. Second, the officers had a particularized and objective basis for suspecting that someone in Torres' vehicle had just purchased drugs at the target apartment. Let's go to the first issue first. They didn't stop the car at the place of the parking violation. Is there any restraint on how far after a parking violation occurs and the car is moved, how long you can track that car down to stop it because of a parking violation? Your Honor, this court has held that probable cause to believe a traffic violation occurred is enough to stop a vehicle. I did not come across a case law that restricted that in any way. I would assume that it would. But in this case... It's a misdemeanor and you're seeing it. If you give the person a ticket while you observe the violation, that's one thing. But I just somehow feel it is a different thing when that violation is over and completed. I mean, could they later on in the afternoon or the next day stopping because of that traffic violation, you think, before a warrant's been issued or anything of that sort? Your Honor, I think later in the day or later in the afternoon would have stretched beyond what this court has held. But this case is... Don't we have a case called Moran that suggests that a misdemeanor traffic stop cannot be the basis for... Traffic infraction can't be the basis for a stop after it's completed? Well, Your Honor, it's important to distinguish the facts in this case from Moran because in Moran they were conducting an investigatory stop on the traffic, on the misdemeanor. Here they were... Officers were not investigating the traffic citation. The traffic stop would have been probable cause to issue a citation. There wouldn't have been a need to investigate it. This case is more in line with McGehee where officers observed the Brown Lexus parked just like Mr. Torres. And by the time the officer turned around to issue the citation, the vehicle had moved. And this court has found that the traffic stop was valid at its inception because the officer observed the illegal parking and was entitled to conduct a traffic stop to issue the citation. I think in this case, it would be kind of contrary to common sense that a motorist would acquire immunity simply by driving away from the violation. What about the fact that the district judge viewed the evidence of the light most favorable to the government and that everything is going to ultimately hinge on whether Officer Krause during that 5 to 10 second lapse was correct or not in saying that that white SUV was the same white SUV that he had seen parked illegally? Why doesn't it taint that finding which ultimately taints everything? Well, Your Honor makes an important point. In this case, the magistrate judge conducted the evidentiary hearing and made the proposed factual findings initially. There is nothing in the record and nothing has been suggested to indicate that the magistrate judge used any light most favorable standard or any improper standard at all. But what the magistrate judge says in a proposed findings in recommendations really doesn't matter. It's simply a recommendation and magistrate Judge Wormuth specifically made no credibility findings. And so when the district judge, then that's what matters. What Judge Wormuth says really doesn't matter, right? Well, Your Honor, respectfully, I think it does matter despite the fact that Judge Wormuth did not make a specific credibility finding. Unless there's an adverse finding on credibility, the fact finding by the magistrate is always going to be based on witness credibility. That's the whole purpose for allowing magistrate courts to conduct the evidentiary hearing and hear the testimony. And I think while I couldn't find case law directly on point, I think it's important to note that in Johnson v Finn out of the Ninth Circuit, there's at least the understanding that if a district court were to reject the credibility finding of a magistrate, they would have to hold a new evidentiary hearing to do so. So I think it's reasonable to assume that absent some sort of rejecting of those, the rejection of those credibility findings, the district court is relying on the magistrate judge's viewing of the evidence right there live. And like counsel said, it's not the cold record, but it's actually live testimony from the witnesses. Well, I don't want to take up too much time, but I'll ask you a quick question. Did Magistrate Judge Wormuth in his 40 pages ever use the word credibility? Did he ever make a credibility, an express credibility finding? Perhaps he did it implicitly, but did he explicitly make any credibility findings about the credibility of Nathan Krauss or anybody else? No, Your Honor. There's not an explicit credibility finding. I would just argue that he made a number of factual findings that were based on either live witness testimony or the video recordings. So there had to have been some sort of credibility finding driving those factual findings. So going back to the stop, assuming, not assuming, but the officers first had the probable cause to conduct the traffic stop based on the observed traffic violation. But they also had a reasonable suspicion that someone in the vehicle had just purchased drugs at the target apartment. Officer Lujan testified that he observed the vehicle pull up in front of a known drug house, which this court has held that that's certainly a fact to consider toward just the fact that the officer observed the vehicle parked in front of a drug house is a fact to consider towards reasonable suspicion. He was also parked in front of nine other unrelated apartments. Yes, Your Honor, but I think it's important. The defense makes much of Officer Lujan not being able to see the passenger enter the target apartment. However, I think it's important to be clear that in the record, Officer Lujan testified that he had a free, clear, unobstructed view of the duplex and that he knew only the target apartment in the duplex was occupied. He testified he was most certain that she didn't enter another building. She entered the target apartment. He said he had a clear view on three separate occasions. He only lost sight of her for about 30 seconds. His testimony would support this finding, even if viewed in no preferable light, if de novo review were conducted. And Torres could have put on evidence to contradict this Officer Lujan's testimony. He didn't. All we have is his testimony, and Mr. Torres had the opportunity to cross and confront him with the map, which he did. And his testimony didn't change. He was very adamant that he saw her approach the target apartment. So even if this court were to review those facts without any favorable light, the result would still be the same. Can we cure the problem? I mean, he did make an evidentiary. The district judge made an evidentiary of error. Can that be cured at the appellate level, or does it have to involve discretion by the district court so that it would have to be remanded? Your Honor, I think it absolutely should be cured at this level, at the appellate level. Even if this court were to remand this case to the district court, the district court would still be looking at the cold record de novo, the same as this court would be. It's much more efficient for this court to go ahead and do that. And we're fortunate in this case because we have the bulk of the encounter recorded on the lapel camera footages from the officers. The issue is he reviews the magistrates and the record de novo. We review the magistrate and the record de novo. So I'm just having some difficulty about, and I suppose you would agree with this, but I mean, I'm wondering what is added since we're going to have to do a de novo anyhow. What is added by the remanding for the district court? I don't think there's anything added by remanding to the district court. And I want to be clear that I, we don't believe that this court needs to conduct a de novo review of the entire record. In this case, there were 13 disputed material facts. Of those 13, five were sustained in favor of the defendant. So we're left with eight. Of those eight, three of those were overruled on legal grounds. So there's no evidence that the district court overruled or applied any sort of wrong legal standards. So those three facts can be set aside. And we're left with five material disputed facts that all relate to Officer Lujan's statement about the passenger approaching the target apartment. So it's not like this court would need to conduct a total review, a de novo review of the entire record. It's a very narrow case. It's not like the case in Finefrock where it was a close call at the district level. There's nothing in the record to suggest that there were any credibility issues with, as related to Officer Lujan. Well, do any of those five place into doubt whether the passenger, in fact, got out of the car and approached the apartment area? Or are they all more specific than that? No, Your Honor. Officer Lujan was clear in his testimony that he was adamant and repeated it on cross that he saw the passenger approach the target apartment. That's not disputed. He admitted he didn't see the defendant enter the target apartment. But he also testified that he knew of the two apartments in the duplex, only one was occupied, and it was the target apartment. So to Your Honor's question, his testimony was clear. So even if the court looked at just the cold testimony, there's really nothing to suggest that he didn't see the defendant, or excuse me, the passenger approach the target apartment. And that would have been enough reasonable suspicion. He admitted he lost sight of her for approximately 30 seconds. I'm a little confused, Ms. Stahl. So you're saying that we can evaluate this de novo on a cold record. Magistrate Judge Wormuth makes no factual findings with regard to Officer Lujan's credibility, and yet you're saying that we can on a cold record de novo say that there was reasonable suspicion because we should credit Officer Lujan's testimony that the passenger approached the duplex when there's nine other apartment complexes, apartments nearby. So how can we credit Officer Lujan's credibility if the magistrate judge made no credibility findings on Officer Lujan, and the district judge made that factual finding in a vacuum in the absence of any factual findings by the magistrate judge by viewing the evidence in the light most favorable to the government? I don't understand how we can cure that particular defect that you identified. Your Honor, again, I would say given the factual findings that the magistrate court did make related to Officer Lujan's testimony, I think there is an implicit credibility finding. But putting that fact aside, even if you took that fact out and said, you know, it's too that's the case, but say that's what the court determined that they wanted to do. There's other factors. The officers still had probable cause to conduct the traffic stop. The minute they approached the vehicle, they had probable cause to search the vehicle based on the smell of burnt marijuana. Defendant Torres gave consent for the search, and the officers clearly indicated that they What justified the pat down? Your Honor, I'm sorry. I didn't mean to cut you off. Here, the officers both testified consistently that they had a number of factors to believe that Mr. Torres was armed and dangerous. Both of the officers were clear that they knew who Mr. Torres was, and the minute that they approached the vehicle, they recognized him. He had been involved in a gang-related shooting months before this talk. They had information from particular information related to Mr. Torres from sources that he had armed himself after the shooting because he was unarmed. Your Honor, the officers testified that that really isn't consistent with their routine, that they did keep an eye on him. They had an officer station where they could see Mr. Torres and his hands and his movements in the vehicle at all times, and that they were kind of watching him and keeping an eye on him. But until they took him out of the vehicle to conduct the search, there wasn't any reason to pat him down. But both officers testified that the minute he left the vehicle, the danger increased because he'd have more mobility. Their backs would be to him while they were searching the vehicle. There were a number of reasons. But they had all of the information from the outset. It just kind of changed once they removed him from the vehicle. Let me ask you about removing him from the vehicle, if I might. Now, as I understand it, they removed him from the vehicle because of consent to search, right? Yes, Your Honor. And so then they say, well, since you're now outside of the vehicle, now that we have, you know, in order to conduct the vehicle search, we need to pat you down because we can't look at you and the vehicle at the same time, which seems to be a chicken and the egg situation. He might not have consented to search of the vehicle if he had known that as a corollary of that, that he's going to be ordered out of the vehicle and then be personally searched. He knows he's got the gun in his pocket. Presumably, he was saying, you can search the vehicle knowing that there's no gun in the vehicle. But he wasn't consenting to a personal search. Why was that a problem? Your Honor, the officers didn't need his consent for the search of the vehicle or for the pat down. They could have searched the vehicle, as I said, based on the probable cause from the smell of burnt marijuana. I see I'm almost out of time. May I finish answering your question? Yeah, please finish your thought. OK, the other thing is that the officers knew he was armed and dangerous from the outset of the stop, and they both testified to that effect. But the minute they got him out of the vehicle, it was important to conduct the pat down, and they didn't need consent for that pat down. For all these reasons, I would ask that the court affirm the district court's decision. Thank you. Thank you, counsel. And could you give Miss Skinner 60 seconds, please, for rebuttal? Is that enough? OK. Thank you. With respect to the issue of whether Mr. Torres was armed and dangerous, Officer Frias's credibility is paramount. And so I'll just highlight again that the lack of credibility findings with respect to Officer Frias specifically, who we know testified to a completely different scenario that was not based, in fact, under oath in a state court hearing, that becomes problematic when we're relying on his beliefs about Mr. Torres and whether or not he was, in fact, armed and dangerous. Did you challenge his credibility in the district court? We challenged his credibility in the hearing in front of Judge Wormuth, and we thought that we had made objections that made it very clear that there were serious issues with his testimony. And so now we're in a position where neither judge even addressed credibility as to this officer. And Mr. Torres was not involved in a gang shooting. He was an unarmed victim who was shot, and it's being investigated as potentially gang related. With respect to the issue of approaching the duplex, I would just say that Officer Lujan did not testify that he could see the door. He did not see her knock on a door. He did not see her enter an apartment. And yet the district court, in this case, implicitly found, viewing the evidence in the government, that she entered the target apartment. Thank you. Thank you, counsel. We appreciate your vigorous arguments this morning. You are excused, and the case will be submitted.